

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **REYMOND MEADAA et al.** | CIVIL ACTION NO. 1:09-cv-01211 |
| -vs- | JUDGE DRELL |
| **K.A.P. ENTERPRISES LLC et al.** | MAGISTRATE JUDGE KIRK |

### R U L I N G

Two motions are currently pending before the Court in this case. The first is a Motion to Strike Exhibits in Opposition to Motion for Partial Summary Judgment (Doc. 71), which will be GRANTED. The second is a Motion for Partial Judgment on the Pleadings (Doc. 18), which the Court converted to a Motion for Partial Summary Judgment, and which will also be GRANTED. Disposition will follow by a separate judgment.

I.   **Background**

This lawsuit arises from a real estate investment venture gone awry. The seven named plaintiffs in this case are a group of five investors and two limited liability companies ("Plaintiffs"). (Doc. 18). Defendants Arun K. Karsan and Versha Patel Karsan ("Karsans") are medical colleagues of the individual Plaintiffs. The Karsans are also involved in the real estate development business.

In 2006, the Karsans approached the Plaintiffs with a proposal to form a limited liability company, Defendant Sainath, L.L.C. ("Sainath"). The purpose of the company would be to own, renovate, and eventually operate the former Louisiana Hotel and

Convention Center ("Convention Center"), which had gone bankrupt. Previously, the Karsans had purchased the Convention Center through their wholly-owned company, Defendant K.A.P. Enterprises, L.L.C. ("K.A.P."). Ownership of the Convention Center was to be transferred to Sainath, and Sainath would then assume the operation of the hotel and Convention Center.

Membership units in Sainath were priced at $125,000 per unit. After viewing a presentation on the investment opportunity which was arranged by the Karsans, the Plaintiffs purchased twenty-eight membership units in Sainath for a total purchase price of $3.5 million. The investment funds were deposited into an account under the name of Sainath, to which, according to the Plaintiffs, only the Karsans had access. As we will discuss more fully below, the parties hotly contest what was given to the Plaintiffs in return for their funds.

Despite admittedly receiving $3.5 million from the Plaintiffs, however, the Karsans have never transferred ownership of the Convention Center from K.A.P. to Sainath. Thus, the initial object of the investment, Sainath's ownership and operation of the Convention Center, was never consummated, and the Convention Center, even now, remains the property of K.A.P. Furthermore, the Plaintiffs' investment funds, which had been deposited in the "Sainath" account, were used to renovate and pay the mortgage note on the Convention Center.

On September 15, 2009, the Plaintiffs filed a motion for partial judgment on the pleadings under Fed. R. Civ. P. 12(c) (Doc. 18), alleging that they were entitled to a judgment ordering the Defendants to return the funds transferred to the Karsans for

the twenty-eight membership units in Sainath. We held a hearing on this motion on October 6, 2009. Following the hearing, the Court determined that the motion could not be properly decided without considering evidence beyond the face of the pleadings. Thus, the Court converted the Plaintiffs' motion to a Rule 56 motion for partial summary judgment pursuant to Fed. R. Civ. P. 12(d), and allowed the parties to conduct additional discovery on an expedited schedule.[1] (Doc. 31).

Discovery is now complete, and the parties have each filed detailed briefs on their positions. However, on April 1, 2010, the Plaintiffs filed a Motion to Strike Exhibits in Opposition to Motion for Partial Summary Judgment (Doc. 71), seeking to exclude two exhibits (or portions thereof) submitted by the Defendants in conjunction with their opposition. Both motions remain pending, and after careful consideration, the Court is now prepared to rule.

## II. Law and Analysis

### A. Motion to Strike

The Plaintiffs move to strike two exhibits attached to the Defendants' memorandum in opposition to the motion for partial summary judgment. Specifically, the Plaintiffs request that the Court strike the Defendants' submissions identified as Exhibit D (Doc. 66-4) and Exhibit 54 (Doc. 66-13).

#### 1. *Exhibit D*

Exhibit D is a two-page affidavit signed by Dr. Robert Chance Dewitt ("Dr.

---

[1] Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to . . . the court, the motion must be treated as one for summary judgment under Rule 56."

3

Dewitt"), and dated March 29, 2010. (Doc. 66-4). The Plaintiffs contend that two statements in the affidavit constitute legal conclusions: (1) Dr. Dewitt's "purchase of SaiNath, L.L.C. share(s)/unit(s) is an ownership interest in the Louisiana Hotel and Convention Center"; and (2) Dr. Dewitt "believes himself to be similarly situated with the Plaintiffs herein with regard to his ownership interest in the Louisiana Hotel & Convention Center." (Doc. 66-4, p. 2, ¶¶ 4, 6). Such statements, the Plaintiffs argue, are not only irrelevant, but also inadmissible in an affidavit submitted in opposition to a motion for partial summary judgment.

Federal Rule of Civil Procedure 56(e)(1) provides, in relevant part, that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Affidavits, or portions thereof, may be stricken from the record if they fail to comport with the requirements of this rule, and more specifically, if they contain inadmissible hearsay, information not based on the personal knowledge of the affiant, or legal conclusions.[2] In other words, "[m]ere conclusory allegations are not competent summary judgment evidence," and may be stricken from the record when submitted in an affidavit. Richardson v. Oldham, 12 F.3d 1373, 1378 (5th Cir. 1994) (quoting Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)). Finally, we note that "the non-movant's affidavits should not be held to as

---

[2] See, e.g., In re Favre, 342 F. App'x 5, 8 (5th Cir. 2009) (affirming a district court's decision to strike an affidavit which was "comprised of nothing more than conclusional allegations and legal arguments"); Gibson v. Liberty Mut. Group, 129 F. App'x 94, 95 (5th Cir. 2005) (holding that a district court properly struck portions of an affidavit submitted to oppose a motion for summary judgment which contained "legal conclusions and hearsay and was not based upon [the affiant's] personal knowledge").

4

strict a standard as those of the movant for summary judgment," which in this case means that we should hold affidavits submitted by the Defendants to a less exacting standard. Id.

The first quoted statement in Dr. Dewitt's affidavit, that Dr. Dewitt's "purchase of SaiNath, LLC share(s)/unit(s) is an ownership interest in the Louisiana Hotel and Convention Center," clearly implies a legal conclusion. (Doc. 66-4, p. 2, ¶ 4). In fact, this statement bears upon one of the more important legal determinations to be made in this case: exactly what, if anything, the investors received from the Karsans in exchange for their payments. Related facts in the affidavit and corresponding evidence, including evidence that Dr. Dewitt received income tax documentation for the investment, are admissible and relevant. But a flat statement from Dr. Dewitt as to the legal significance of any transactions that he conducted is not admissible as summary judgment evidence. Therefore, this statement will be stricken from Dr. Dewitt's affidavit.

The second disputed contention in Dr. Dewitt's affidavit, that he believes himself to be "similarly situated with the Plaintiffs," is likewise inadmissible. (Doc. 66-4, p. 2, ¶ 6). "Statements made on information and belief do not constitute proper summary judgment evidence under rule 56(e)." de la O v. Hous. Auth. of City of El Paso, Tex., 417 F.3d 495, 502 (5th Cir. 2005); accord Bolen v. Dengel, 340 F.3d 300, 313 (5th Cir. 2003) (" Rule 56(e) requires statements in affidavits to be based on personal

knowledge and not based on information and belief.").[3] For instance, when an affiant stated that "it [was] his 'understanding' that the local police chief and sheriff have declared El Paso among the country's safest cities," the court held that this statement did not constitute proper summary judgment evidence, because it did not "appear to be based on personal knowledge, but rather on speculation." de la O, 417 F.3d at 501-02. Likewise, in Bolen, the Court struck an affidavit which stated that it was based "on information and belief, and to the best of affiant's recollection," because the affidavit was not based on the affiant's personal knowledge. 340 F.3d at 313.

Here, Dr. Dewitt's affidavit states only that he "*believes* himself to be similarly situated with the Plaintiffs herein with regard to his ownership interest in the Louisiana Hotel & Convention Center," not that he has any personal knowledge of the truth of that assertion. (Doc. 66-4, p. 2, ¶ 6) (emphasis added). The statement speculates as to the form and effect of the transactions conducted by the Plaintiffs. Again, matters within Dr. Dewitt's personal knowledge or other evidence tending to show that Dr. Dewitt is similarly situated to the Plaintiffs would likely be admissible. But this statement represents nothing more than Dr. Dewitt's unsubstantiated belief,

---

[3] The opinion cited by the Plaintiffs does not adequately support the Plaintiffs' contention on this point. See Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003). In that case, the Seventh Circuit held that "although personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" Id. (quoting Visser v. Packer Eng'g Assoc., 924 F.2d 655, 659 (7th Cir. 1991)). The Payne court upheld the admissibility of an affidavit which gave "a very detailed factual account of the incident based upon [the affiant's] first-hand experience with" a police officer accused of arresting the affiant without probable cause and using excessive force. See id. Dr. Dewitt's statement, by contrast, is not a factual account at all, but instead is a purely speculative statement regarding the nature and implications of the transactions conducted by the Plaintiffs, and how they may compare to his own dealings with the Karsans.

which is inadmissible.[4]

Therefore, both statements in Dr. Dewitt's affidavit must be stricken, but the rest of the affidavit will remain part of the record. The Plaintiffs' motion as to these statements in the affidavit will be GRANTED.

2.  *Exhibit 54*

Exhibit 54 is a two-page letter written by Daniel G. Brenner ("Mr. Brenner"), former counsel for the Defendants, to Brent Pearson ("Mr. Pearson"), former counsel for the Plaintiffs, dated April 15, 2009. (Doc. 66-13). The letter was written before this lawsuit was filed on July 22, 2009. The Plaintiffs contend that the letter was connected with pre-lawsuit settlement negotiations, and is therefore inadmissible.

Federal Rule of Evidence 408(a)(2) bars the admission of "conduct or statements made in compromise negotiations regarding the claim" when such evidence is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." However, the rule does not apply "if the evidence is offered for purposes not prohibited by subdivision (a)." Fed. R. Evid. 408(b). Broadly, this rule "forbids the admission of offers of compromise or negotiations for compromise in certain civil cases." United States v. Miller, 588 F.3d 897, 904 (5th Cir. 2009).

In this instance, the letter appears to be an effort by the Defendants to resolve the budding dispute by offering to return the full amount of the Plaintiffs' investment

---

[4] The statement also borders upon reaching a legal conclusion.

funds. Such a letter can be fairly cast as an offer of settlement. Moreover, we find that the Defendants seek to offer this evidence to establish the "invalidity of" the Plaintiffs' conversion claim, a prohibited purpose listed in Rule 408(a). As such, the motion will be GRANTED as to this point as well.

### B.   Motion for Partial Summary Judgment

After the Court converted the Plaintiffs' motion to one for partial summary judgment, the parties were allowed to conduct discovery on an expedited basis. The critical question presented in this motion is whether the Plaintiffs are entitled to the return of their investment funds. After reviewing the evidence compiled by the parties during discovery, the Court finds that partial summary judgment in favor of the Plaintiffs is warranted.

#### 1.   *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In conducting this analysis, the Court must construe "all of the evidence and all of the factual inferences from the evidence . . . in a light most favorable to the party opposing the motion." King Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517

(5th Cir. 2009). Any doubts are likewise resolved in favor of the nonmoving party. United States ex rel. Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009). Once the movant has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists. United States v. $92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008). "However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

2. *Analysis*

The Defendants contend that at least two genuine issues of material fact remain in the case which preclude summary judgment: (1) that the Plaintiffs received various tax benefits and an ownership interest in the improvements to the Convention Center in return for their investments; and (2) that the Plaintiffs cannot prove that their funds were converted by the Defendants. We find both alleged disputes irrelevant to our disposition of this motion.

First, the Defendants submitted excerpts of deposition testimony and official tax documents indicating that at least some of the Plaintiffs shared equally in the tax losses suffered by Sainath. Dr. Harry Hawthorne ("Dr. Hawthorne"), one of the Plaintiff-investors, testified in a deposition that he received a "Schedule K-1" tax form for the 2007 tax year. (Doc. 66-2, Exh. B, p. 154). The Defendants also submitted an Internal Revenue Service ("IRS") Form 1065 for Sainath for each of the years 2006,

2007, and 2008. (Doc. 66-10, 66-11, 66-12, Exhs. 17, 19, 20). Attached to the tax returns are Schedule K-1s for various individuals and corporations listed as Sainath partners (or members), including each of the Plaintiffs.[5] These tax documents, the Defendants argue, evidence the Plaintiffs' ownership interests in Sainath, or at least their having "acted like" owners for tax purposes. The Defendants also maintain that Sainath did not have to issue a paper certificate to solidify the Plaintiffs' respective membership interests in the company.

The Plaintiffs argue that this evidence is irrelevant and inconclusive in determining whether they became members of Sainath. Rather, the Plaintiffs focus upon the nature of the transaction as it was proposed by the Karsans. According to the Karsans' own depositions, the Plaintiffs were offered an opportunity to acquire an equity interest in Sainath, and Sainath was formed to own and operate the Convention Center.[6] However, the Karsans' company, K.A.P., continued to own and still owns the Convention Center. Even so, the Plaintiffs' investment funds, which were entrusted to the Karsans vis-a-vis Sainath, have already been spent on renovations to and mortgage notes on the Convention Center. The $3.5 million paid

---

[5] Two of the named Plaintiff-investors received a Schedule K-1 for 2006, 2007, and 2008: Reymond Meadaa and Hulenci, L.L.C. Defendant K.A.P., along with Cook Business Investments, L.L.C., an entity not involved in this lawsuit, likewise received a Schedule K-1 for all three years. The rest of the Plaintiffs only received a Schedule K-1 for the 2007 and 2008 tax years. Judging from this information, in the year 2006, four partners of Sainath were reported to the Internal Revenue Service ("IRS"), while nine partners were reported in 2007 and 2008.

[6] In fact, the proposed operating agreement for Sainath states that the purpose of the company would be, in part, "owning and operating the Baymont Inn and Suites and the Sai Convention Center in Alexandria, Louisiana." (Doc. 66-7, Exh. 14, p. 4).

by the Plaintiffs to acquire equity interests in Sainath has thus been used for the benefit of income-producing property owned by another company.

The IRS documents listing the Plaintiffs as members of Sainath are not controlling in our determination. A party's actual status as a member (or manager, or presumably non-member) of a company is not necessarily altered by the designation of that party as having another status on a document not directly related to the L.L.C., such as a tax form or a contract of lease. See Moise v. Moise, 956 So. 2d 9, 11 (La. App. 5th Cir. 2007). Furthermore, notwithstanding the question of whether they are Sainath members, these tax documents do not otherwise impact the Plaintiffs' potential right to recover their investment funds.

We note that the parties traded comments about who may have "explaining to do" to the IRS with regard to this transaction. However, the tax implications of the purported sale of the Sainath membership units are not issues before the Court for decision, and thus are not relevant. In all, while we have taken the tax evidence into account, there are limits as to what aspects of it we may evaluate, and what inferences we may fairly draw from it. Ultimately, the tax evidence is not determinative of the instant motion.

Likewise, the fact that no certificates or other documents were issued to the Plaintiffs evidencing the sale of Sainath membership units is not dispositive. Under Louisiana statutory law, "[a] membership interest [in a limited liability company] shall be an incorporeal movable." La. R.S. § 12:1329. This provision parallels the

definition of incorporeal movables in the Louisiana Civil Code:

> Rights, obligations, and actions that apply to a movable thing are incorporeal movables. Movables of this kind are such as bonds, annuities, and interests or shares in entities possessing juridical personality.
>
> Interests or shares in a juridical person that owns immovables are considered as movables as long as the entity exists; upon its dissolution, the right of each individual to a share in the immovables is an immovable.

Thus, the Plaintiffs' interests in Sainath need not have been evidenced by a certificate or other tangible instrument; no paper was required to have been "issued" to the Plaintiffs after they submitted payments to Sainath. See generally In re Howard Marshall Charitable Remainder Annuity Trust, 709 So. 2d 662, 671 (La. 1998) ("The situs of incorporeal movable property, 'if not evidenced by a negotiable instrument or corporation stock certificate, is the state having jurisdiction over the debtor.'") (quoting La. C. Civ. Proc. art. 8, cmt. (c)). The absence of such a certificate or instrument therefore does not necessarily mean that the Plaintiffs were somehow deprived of their equity interests in Sainath.

Furthermore, the Defendants offer evidence of their attempts to transfer the Convention Center to Sainath.[7] Although this evidence seems to indicate that some efforts were made to complete the transfer, it remains clear that none were

---

[7] Specifically, the Defendants submitted 2008 correspondence from two attorneys seeking to finalize and have executed corporate documents for Sainath and transfer the hotel and Convention Center to Sainath. Notably, both attorneys expressed concern about the status of the purported members' ownership interests in Sainath. One of the attorneys stated that a Sainath Member Acknowledgment and Agreement could not be executed "until we know who is in and who is out." (Doc. 66-7, Exh. 14, p. 1).

successful. As such, the only profitable asset that Sainath was intended to own has never come into the company's grasp.

To summarize, our role at this stage is to determine whether a genuine issue of material fact exists for trial on the particular issue presented by this motion for partial summary judgment. Fed. R. Civ. P. 56(c). As we have observed above, one point of contention in the case is whether the Plaintiffs actually became members of Sainath. The Plaintiffs initially claimed that they had purchased membership units in Sainath, but now seek partial summary judgment based upon the Defendants' position that they are not members. Conversely, the Defendants first averred that the Plaintiffs never became members of Sainath because they refused to sign an operating agreement. Now, the Defendants seek denial of the Plaintiffs' motion because the Plaintiffs are, or have at least "acted like," Sainath members. Obviously, neither party has adopted a consistent position.

In the end, the parties' filings do little to clarify those disputes. The Court has before it: (1) evidence that the Plaintiffs availed themselves of the tax benefits of investing in Sainath, including depreciation on the property; (2) correspondence from attorneys expressing ambivalence as to the membership status of the Plaintiffs; and (3) no Sainath operating agreement bearing the signatures or reflecting the assent of the Plaintiffs as members of the company. With only smatterings of conflicting evidence related to these and various other aspects of the transaction, it would be difficult to make a firm determination on this point. Indeed, a trial on the merits is not

likely to result in any more evidence than we already have.

However, the nature of the pending motion does not require such a firm determination. The Plaintiffs argue that "[e]ven if Plaintiffs are members of Sainath," which is what they originally averred, " they are still not members of a company that owns the Convention Center." (Doc. 70, p. 6). In other words, the Plaintiffs maintain that their membership status relative to Sainath is irrelevant for purposes of this motion. We agree.

Two salient and uncontested facts guide our determination here: (1) the transfer of the Convention Center to Sainath was the paramount purpose of forming the company, purchasing membership units in it, and maintaining its existence; and (2) the Convention Center was never transferred to Sainath. These plain facts, taken together, represent a fundamental failure by the Defendants to deliver the "thing" purportedly sold to the Plaintiffs, and to fulfill the consideration, or cause, for the sale between the parties.[8] On that basis alone, then, we find that the Plaintiffs' motion must be granted.

Finally, we do not consider the Defendants' arguments related to whether the

---

[8] The baseline requirements "for the perfection of a sale" in Louisiana are "[t]he thing, the price, and the consent of the parties." La. Civ. C. art. 2439. "Cause," under Louisiana law, "is the reason why a party obligates himself." Id. art. 1967. In this case, the "things" to be sold to the Plaintiffs, and the causes of the sales, were, by all accounts, membership units in a company which was to own and operate the Convention Center. For whatever reason, the Plaintiffs have never received membership units (or any other valuable assets, for that matter) which satisfy that description. "When the seller fails to deliver . . . the thing sold, the buyer may demand specific performance of the obligation of the seller to deliver, or may seek dissolution of the sale. . . . [and] [i]n either case . . . the buyer may seek damages." Id. art. 2485. Thus, the party who has been deprived of the "thing" in a sale is entitled to "indemnity in money . . . . for the damage suffered . . . as a result of the non-performance of the obligation." Lombardo v. Deshotel, 647 So. 2d 1086, 1090 (La. 1994).

Plaintiffs received an ownership interest in the improvements to the Convention Center, or whether the Plaintiffs' conversion claim is viable in law or in fact. Both issues are contingent, at least in part, upon the Plaintiffs' status as members or non-members of Sainath, and therefore, cannot be appropriately decided at this point.[9] But, they do not need to be.

As to the limited issue of whether the Plaintiffs are entitled to recover their investment funds, the Court finds that there was indeed a failure of consideration (cause) and there are no genuine issues of material fact about that. The Plaintiffs are entitled to judgment as a matter of law. Therefore, the Plaintiffs' Motion for Partial Summary Judgment (Doc. 18) will be **GRANTED**, and the Plaintiffs will be awarded the sum of $3.5 million.

### III. Conclusion

At present, all of the circumstances surrounding the transactions that gave rise to this lawsuit are not clear. Perhaps equally muddled are the parties' real positions in this case. Thus far, the only certainties seem to be that a great deal of money changed hands in an investment venture involving structures which are important to the local community, and that the object of that venture never fully came

---

[9] On face, we have serious reservations about the Defendants' contention that the Plaintiffs have acquired some interest in the improvements to the Convention Center. Louisiana law is clear that "[a] member shall have no interest in limited liability company property." La. R.S. § 12:1329. Even if the Defendants' argument is that Sainath, rather than its individual members, has acquired the property interest, we are nonetheless skeptical. The renovations to the Convention Center may well have been incorporated into the building by this point, and as such, may have become its component parts under Louisiana law. See La. Civ. C. art. 465. In any event, those are determinations which must be made at a later date.

15

to fruition. However, the undisputed and dispositive facts in this case are that the Plaintiffs paid $3.5 million to the Defendants, and in return, never received the essence of what they were promised: equity interests in a company which owned and operated the Convention Center. Thus, they are entitled to the return of their investment funds. The rest of the Plaintiffs' claims remain viable and pending.

SIGNED on this 25th day of May, 2010 at Alexandria, Louisiana.

                                            DEE D. DRELL
                                            UNITED STATES DISTRICT JUDGE