RECEIVED
IN ALEXANDRIA, LA
AUG 20 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **REYMOND MEADAA et al.** | CIVIL ACTION NO. 1:09-cv-01211 |
| -vs- | JUDGE DRELL |
| **K.A.P. ENTERPRISES LLC et al.** | MAGISTRATE JUDGE KIRK |

### RULING

Pending before the Court is the Defendants' Motion to Alter or Amend the Judgment Under FRCP 59(e). (Doc. 84). Broadly, the Defendants claim that this Court's Judgment (Doc. 83) granting the Plaintiffs' Motion for Partial Summary Judgment (Doc. 18) contains clear errors of law. For the reasons that follow, the Defendants' motion will be **GRANTED IN PART AND DENIED IN PART**. Disposition will follow by a separate order.

**I.  Background**

In this lawsuit, the seven named Plaintiffs – a group of investors consisting of five individuals and two limited liability companies ("Plaintiffs") – seek a refund of investment funds in the amount of $3.5 million. These funds were purportedly transferred by the Plaintiffs to an account held in the name of Defendant Sainath, L.L.C. ("Sainath"). At issue in this lawsuit is what the Plaintiffs received in return for their investment funds, and thus, whether they are entitled to a return of those funds.

The Plaintiffs made their initial investments in Sainath in 2006, when Defendants Arun K. Karsan and Versha Patel Karsan ("Karsans") approached the Plaintiffs with a real estate development proposal. The Karsans' had previously purchased the former

Louisiana Hotel and Convention Center ("Convention Center") through their wholly-owned limited liability company, Defendant K.A.P. Enterprises, L.L.C. ("K.A.P."). The Karsans' proposal was to form another limited liability company (Sainath) which would own, renovate, and eventually operate the Convention Center.

The Plaintiffs purchased twenty-eight membership units in Sainath at a price of $125,000 per unit, totaling a $3.5 million investment. However, no Sainath operating agreement was signed, and the Convention Center was never transferred from K.A.P. to Sainath. Nonetheless, the Karsans, by and through Sainath, used the Plaintiffs' investment funds to renovate the Convention Center property.

On May 26, 2010, this Court entered a Judgment (Doc. 83) granting the Plaintiffs' Motion for Partial Judgment on the Pleadings (Doc. 18), which had been converted to a Motion for Partial Summary Judgment. Accordingly, the Court awarded Plaintiffs the sum of $3.5 million as a refund of their investment funds. (Doc. 83).[1] Shortly thereafter, on June 10, 2010, Defendants K.A.P. and the Karsans filed this Motion to Alter or Amend the Judgment Under FRCP 59(e) (Doc. 84), alleging that this Court's judgment rested upon clear errors of law.[2] We have carefully considered the parties' arguments regarding this motion, as well as our ruling awarding the Plaintiffs a refund of their investment funds. In all, we find partial merit in the Defendants' motion, and thus, we grant the Defendants partial relief.

---

[1] The details of the Court's reasoning will be discussed in further detail below.

[2] More specifically, the motion states that this Court "erred in confusing the civilian concept of transfer of ownership in a sales context with record title ownership, and in crafting a remedy neither contemplated by the Louisiana Civil Code, or pled by plaintiffs in their Complaint." (Doc. 84-1, p. 2).

## II. Law and Analysis

### A. Motion to Alter or Amend Judgment

Under Fed. R. Civ. P. 59(e), a party may file a motion to alter or amend a judgment already entered by the Court. However, in order to prove an entitlement to relief, the movant "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" Rosenzweig v. Azurix Corp., 332 F.3d 854, 863-64 (5th Cir. 2003) (quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). The purpose of a Rule 59(e) motion is to question the correctness of a judgment, and accordingly, "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004); see also Rosenzweig, 332 F.3d at 864 (noting that a Rule 59(e) motion "'cannot be used to raise arguments which could, and should, have been made before the judgment issued'") (quoting Simon, 891 F.2d at 1159). Finally, we note that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." Templet, 367 F.3d at 479.

### B. Ownership of the Convention Center

The Defendants first argue that ownership of the Convention Center was transferred "by operation of law," and that this Court has misapprehended the civil law concept of transfer of ownership. In particular, the Defendants cite La. Civ. C. art. 2456, which states that "[o]wnership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not

3

yet delivered nor the price paid." Pursuant to this article, the Defendants maintain that ownership of the Convention Center was transferred *between the parties* when the parties reached an agreement as to the thing and the price. We disagree.[3]

Overall, the Defendants may be proceeding from a misunderstanding of our ruling. To reiterate, this Court ruled that the Plaintiffs were entitled to recover their investment funds because of a failure of cause and delivery of the "things" (in their promised form) involved in the purported sale. We also concluded that ownership of the Convention Center was never transferred to Sainath. To clarify, the former point – that there was a failure of cause, and of delivery of the "thing" promised in the sale of the Sainath membership units – *resulted from* the latter point – that the Convention Center was never sold to Sainath. The Plaintiffs were promised membership units in a company which was to own and operate the Convention Center. The Defendants failed to deliver those "things" to the Plaintiffs, which was their "cause" for transferring the investment funds to the Defendant. Thus, the Plaintiffs are entitled to a refund of their investment funds.

---

[3] To the best of the Court's understanding, the Defendants attempt to parallel the transfer of the Convention Center from K.A.P. to Sainath, with the agreement between the parties to the sale of the Sainath membership units. However, the Plaintiffs had, and still have, absolutely no legal power to effect such a transfer, because they had no ownership interest in the Convention Center. Even if such an agreement had the effect of transferring the Convention Center *between the parties* (which it does not), and even if a verbal agreement to do so were sufficient to constitute delivery of the "thing" promised to the Plaintiffs (which it is not), the parties never agreed to the thing and the price involved in the transfer of the Convention Center as required by article 2456. Instead, the Karsans only assured the Plaintiffs that the Convention Center would be transferred; they never agreed upon the precise thing and price involved in the sale of the Convention Center. The parties did agree upon the price of Sainath membership units. We strain to grasp what end this argument may serve, but to the extent that counsel for the Defendant seeks to conflate the parties' agreement regarding membership units in Sainath and the transfer of the Convention Center, counsel is legally mistaken. As we will discuss below, the agreement to sell the membership units in Sainath had no legal effect upon the promised (but still uncompleted) sale of the Convention Center to Sainath.

4

We did not find that the Plaintiffs were, or were not, members of Sainath. As we observed, both parties have taken inconsistent positions on this point throughout the course of the litigation. (Doc. 82, pp. 13-14). For purposes of the Plaintiffs' motion, we concluded that the Plaintiffs' membership status was irrelevant. The evidence before us regarding the membership status of the Plaintiffs was in hopeless conflict, and we noted that a trial on the merits was unlikely to produce additional probative evidence. (Doc. 82, pp. 13-14). Notwithstanding that dispute, we ruled in the Plaintiffs' favor, because the evidence displayed "a fundamental failure by the Defendants to deliver the 'thing' purportedly sold to the Plaintiffs, and to fulfill the consideration, or cause, for the sale between the parties." (Doc. 82, p. 14).

The Defendants, however, challenge each of the legal bases upon which our conclusion rests. First, and most importantly, the Defendants maintain that ownership of the Convention Center was transferred between the parties by operation of law. That assertion is flatly incorrect. It is true that under La. Civ. C. art. 2456, "[o]wnership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." But, to this Court's knowledge, there was never any firm agreement between the parties (or any individuals not named in this lawsuit) regarding the sale of the Convention Center.[4] Indeed, counsel for the Defendants does not argue that there was such an agreement.

---

[4] We acknowledged evidence that some efforts were made to complete the transfer of the Convention Center to Sainath. (Doc. 82, p. 12). However, none of those efforts were ever successful, and the Convention Center remains K.A.P. property.

Rather, the Defendants argue that there was an agreement as to the sale of membership units in Sainath, and the price to be paid for those membership units. Thus, the argument continues, "the Court should have concluded that the sale had been perfected *between the parties to the sale* even though the thing sold had not yet been delivered (i.e. moving record title ownership of the Convention Center into SaiNath)." (Doc. 84-1, p. 4) (emphasis in original.[5] What we concluded, however, is that, *regardless of whether the sale of the membership units had been perfected* (i.e. whether the Plaintiffs were members of Sainath), the Plaintiffs were entitled to a refund of their investment funds. This is because *ownership of the Convention Center was never transferred to Sainath.*

The parties' agreement regarding the sale of the Sainath membership units could not have somehow effected a transfer of the Convention Center to Sainath. Moreover, Article 2456, which the Defendants rely upon, applies to the sale of movables, not immovables. See Morris v. People's Bank & Trust Co. of Natchitoches, 580 So. 2d 1037, 1041 (La. App. 3d Cir. 1991) (citing article 2456, among other articles, for the proposition that "oral agreements to buy and sell corporeal and incorporeal movables are recognized in Louisiana"); Lambert v. Succession of DeHass, 271 So. 2d 910, 914 (La. App. 1st Cir. 1972) ("'[Article 2456] deals with the sale of movables or with a contract for the sale of land, the latter of which may be enforced between the parties.'") (quoting Gibsland Supply Co., Inc. v. Am. Employers Ins. Co., 242 So. 2d 310, 314 (La. App. 2d Cir. 1970)). The Louisiana Civil Code unambiguously requires an

---

[5] As we will reiterate below, the mere agreement to transfer an immovable does not, by operation of law, effect the transfer of the immovable.

authentic act, or an act under private signature, to complete the sale of an immovable such as the Convention Center. See La. Civ. C. art. 2440 ("A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839."); Id. art. 1839 ("A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.").[6] Therefore, we see no basis upon which to conclude that ownership of the Convention Center was transferred to Sainath, by operation of law or otherwise.

Furthermore, even if membership units in Sainath were transferred to the Plaintiffs, there is no reason to conclude that the sale of the Convention Center somehow followed. The Plaintiffs are correct that two separate sales were involved in the relationship between the parties: the sale of the membership units in Sainath to the Plaintiffs, and the sale of the Convention Center by K.A.P. to Sainath. Whether the former occurred cannot impact the latter, because of the writing requirement involved in the sale of immovables. However, the sale of the Convention Center to Sainath formed the principal basis upon which the purported sale of the Sainath membership units occurred. In fact, the sale of the Convention Center represented the single most important element of the "thing" sold to the Plaintiffs, and the root "cause" for the Plaintiffs to engage in the transaction.

---

[6] As to the exception to the writing requirement contained in article 1839, neither party has suggested that there has been actual delivery of the Convention Center to Sainath which may have given effect to any oral agreements reached.

7

In short, the Convention Center remains the property of K.A.P., a company which is wholly owned and controlled by the Karsans. For that reason, the Defendants have utterly failed to deliver the "thing," or to satisfy the "cause," which was agreed upon by the parties. Under the Louisiana Civil Code:

> When the seller fails to deliver or to make timely delivery of the thing sold, the buyer may demand specific performance of the obligation of the seller to deliver, or may seek dissolution of the sale.
>
> In either case, and also when the seller has made a late delivery, the buyer may seek damages.

La. Civ. C. art. 2485; see also Lombardo v. Deshotel, 647 So. 2d 1086, 1090 (La. 1994) ("In cases of non-performance, the monetary indemnity is for the damage suffered by the creditor as a result of the non-performance of the obligation; it is clear therefore, that such indemnity can never be cumulated with actual performance."); Roba, Inc. v. Courtney, No. 2009 CA 0508, 2010 WL 3196194, at *5 n.16 (La. App. 1st Cir. Aug. 10, 2010) ("An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance.") (citing La. Civ. C. art. 1994). The Defendants have also failed to establish that this Court's Judgment (Doc. 83) contained any legal error regarding our conclusion as to ownership of the Convention Center. Therefore, the Defendants' motion will be denied as to this argument.

### C. The Remedy

Next, the Defendants argue that "[t]he Court awarded the Plaintiffs the total amount of their investments, and allowed them to keep the tax benefits they have reaped over the past years, damages not provided for by the Louisiana Civil Code."

(Doc. 84-1, p. 5). We have done no such thing. As we noted in our ruling, "the tax implications of the purported sale of the Sainath membership units are not issues before the Court for decision, and thus are not relevant." (Doc. 82, p. 11). We did not decide that the Plaintiffs are, or are not, entitled to retain any (proper or) improper tax benefits arising from their investment in Sainath. In fact, we decided nothing with regard to the tax implications of the sale. Thus, our judgment does not constitute a double recovery. Any improper tax benefits retained by the Plaintiffs must be presented to the appropriate authority in tax matters: the Internal Revenue Service. However, the tax returns submitted by the Defendants do not impact the Plaintiffs' entitlement to recover their investment funds, which is the only question before the Court in this motion.

Additionally, the Defendants contend that this Court should have ordered specific performance of any outstanding obligations, instead of awarding damages. But, the Plaintiffs have sought damages, and this Court is not obligated (as a general rule) to order specific performance in a case such as this: "Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court." La. Civ. C. art. 1986. Once again, the sales-specific article governing this action provides that the buyer may "demand specific performance of the obligation of the seller to deliver, or may seek dissolution of the sale," but "[i]n either case . . . the buyer may seek damages." Id. art. 2485. It is well-settled that the decision of whether to grant specific performance rests within the sound discretion of the Court. See id. art. 1986; accord Aaron & Turner, L.L.C. v. Perret, 22 So. 3d 910, 916 (La. App. 1st Cir. 2009).

In exercising our discretion, we must take into account the potential difficulties that may be associated with specific performance. Stated otherwise, "[i]f specific performance is impracticable, the court may allow damages to the obligee." Roba, 2010 WL 3196194, at *5; see also Charter Sch. of Pine Grove, Inc. v. St. Helena Parish Sch. Bd., 9 So. 3d 209, 222 (La. App. 1st Cir. 2009) ("When specific performance is impracticable or when the court, in its discretion, refuses to grant specific performance of an obligation to do, the court may instead fix damages."). In this case, we have concluded that specific performance would be highly impracticable, and therefore, we have declined to order that remedy.

As the Defendants suggest, the Court could order K.A.P. to transfer the Convention Center to Sainath. Thereby, this Court could force the parties to remain business partners in a real estate development venture, and compel the sale of a large commercial property which the Defendants could not (or did not) voluntarily effectuate for approximately three years. They have also not even attempted to explain why not. As is clear from the contentious nature of this litigation, however, a great deal of enmity and distrust has apparently developed between the parties. Various business decisions regarding the Plaintiffs' investment funds have already been made absent their consent or involvement. Various changes in market conditions, attitudes, and the investment property itself have taken place. For all of these reasons, ordering specific performance in this case would surely be impracticable, if not unfair.

Article 2014 of the Louisiana Civil Code does not alter this conclusion. That article provides that "[a] contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially

impair the interest of the obligee." La. Civ. C. art. 2014. Once again, whether a party has rendered substantial performance of an obligation is a factual inquiry within the Court's discretion. Brockhoeft v. McQueen, 432 So. 2d 402, 405 (La. App. 1st Cir. 1983) ("[W]here there is a finding of fact such as 'substantial performance', the appellate court should review the record to see if the discretion is supported by the evidence. It should only be reversed if it is 'manifestly erroneous, i.e. clearly wrong.'") (quoting Arceneaux v. Domingue, 365 So. 1330 (La. 1978)).

The Defendants maintain that they have rendered substantial performance, consisting primarily of "payment of SaiNath's insurance premiums . . ., personal guarantees and use of personal credit cards to fund SaiNath's operations, and the financial treatment of [P]laintiffs as record title owners in SaiNath." (Doc. 91, p. 3). However, these acts are not sufficient to constitute substantial performance of the obligation most relevant to this motion: the transfer of the Convention Center to Sainath.[7] They are, in addition, acts which the Defendants undertook as members of Sainath themselves, and thus, in their own self-interest. We repeat that what the Defendants promised the Plaintiffs is the delivery of membership units in a company which was to own and operate the Convention Center. Because the Defendants appropriated the Plaintiffs' investment funds to the improvement of the Convention Center, but failed to transfer the property to Sainath, they failed substantially to

---

[7] The Defendants repeatedly reference the deposition of an attorney who worked with the parties to this transaction for the proposition that, "from a financial standpoint, all financial records of SaiNath have been maintained consistent with the . . . Convention Center being titled in SaiNath's name." (Doc. 84-1, p. 6). Yet, the attorney also states that, as of the time he was involved in the transaction, the Convention Center had not been transferred to Sainath. (Doc. 84-5, Exh. D, pp. 46-47). Whether the Plaintiffs (or anyone else) "acted like" the Convention Center had been transferred is irrelevant to the question of whether it had actually been transferred.

perform that obligation. This sort of scenario is contemplated by the commentary to article 2014: "Although [the] Article prevents a party from receding from a contract on a mere excuse, it does not prevent the recovery of damages by a party who has not received a full or perfect performance." La. Civ. C. art. 2014 cmt. (b). Here, the Plaintiffs have certainly not received "a full or perfect performance," and they may therefore recover damages.

In summary, the Plaintiffs have chosen a remedy to which they are clearly entitled under Louisiana law. Alternative remedies, such as specific performance, would be impractiable. Moreover, because the Defendants have not completed the most critical element of the performance promised to the Plaintiffs, we find that the Defendants have failed to render "substantial performance" as contemplated by the Louisiana Civil Code. Therefore, the Defendants' motion is denied on this ground.

D.     **The Defendants Responsible for Satisfying the Court's Judgment**

Finally, the Defendants maintain that this Court's judgment against "the Defendants" was erroneous, because (1) the Plaintiffs did not seek an award against Sainath or K.A.P.; and (2) to order recovery against the Karsans individually, the Court would have to "pierce the corporate veil,"[8] and no evidence or argument has been presented to the Court regarding veil-piercing. The Plaintiffs concede that they have sought recovery only from the Karsans individually, but argue that such recovery is warranted, because the Karsans were the actual sellers in the transaction giving rise to

---

[8] Of course, neither organizational Defendant involved in the case is a corporation; both are limited liability companies. The import of that fact will be addressed below. However, for ease of association and clarity, we continue to use the phrase "corporate veil" for the present.

this lawsuit.[9] To clarify, there are four named Defendants in this lawsuit: K.A.P., Arun K. Karsan, Versha Patel Karsan, and Sainath.

The Defendants submit evidence establishing that the Plaintiffs' checks were deposited in an account held in the name of Sainath. (Doc. 84-6, Exh. E). The Plaintiffs do not seek to controvert this evidence, but point out that the Karsans were the sole controlling members of Sainath, and were themselves responsible for depositing the checks and ultimately spending the investment funds. However, the Defendants correctly point out that there is no evidence that the investment funds were used by the Karsans personally, or that the Karsans did not solicit and deposit the Plaintiffs' checks on behalf of, and as members of, Sainath. The Defendants are also correct that, under Louisiana statutory law, "[a] member shall have no interest in limited liability company property." La. R.S. § 12:1329. Therefore, the Karsans had no ownership interest in the Plaintiffs' investment funds; in the absence of countervailing evidence, we would be compelled to conclude that Sainath owned, and spent, those funds.

As such, the Court's Ruling and Judgment (Docs. 82, 83) rest upon unclear grounds. There is at least some argument that the Karsans, as members of Sainath, may have been operating under the protection of the "corporate veil." Therefore, the Defendants' motion will be GRANTED IN PART but only as it pertains to the issue of which Defendants may properly be held liable to satisfy the judgment rendered by this Court on May 26, 2010 (Doc. 83). However, because various questions remain

---

[9] The Plaintiffs were frankly constrained to concede this point, as both their initial Fed. R. Civ. P. 12(c) Motion for Partial Judgment on the Pleadings (Doc. 18), and their Supplemental Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 60), sought relief only against the Karsans.

regarding this issue, we withdraw our Judgment (Doc. 83) on the Plaintiffs' Motion for Partial Summary Judgment (Doc. 18) at this point. Instead, the parties will submit further briefs to the Court discussing which defendants may or should be specifically cast in judgment. More particularly, the parties' briefs must address the following questions: (1) whether this Court's judgment may or should be levied against the Karsans individually, or whether one or both of the corporate defendants may or should be liable individually, jointly, or in solido, for the refund mandated by the Court's judgment; and (2) if necessary, whether the Court may or should pierce the "corporate veil" of one or both of the organizational Defendants herein.[10]

---

[10] In one of the most recent discussions of the topic, the Louisiana Fourth Circuit determined that a claimant may be allowed to pierce the veil of a limited liability company through the same methods applied to a corporation:

> General Louisiana LLC law pursuant to La. R.S. 12:1320(B) provides that:
>
> - members are not personally liable for the debts, obligations and other liabilities of the LLC to third parties, and
>
> - a LLC member is not a proper party in any proceeding against the LLC.
>
> However, third parties can bring claims against members and managers for "any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him." La. R.S. 12:1320(D). Our Court has explained that "[t]o have meaning within the entire statute, the phrase 'or other negligent or wrongful act by such person' must refer to acts done outside one's capacity as a member, manager, employee, or agent of the limited liability company."
>
> As we reasoned in Curole, the provisions of La. R.S. 12:1320(D) provide for the piercing of a LLC's veil when the situation so warrants. We explained in Curole that:
>
>> . . . the only case applying Louisiana law allowing the veil of an [sic] limited liability company to be pierced in the same way that the view of a corporation is pierced is Hollowell v. Orleans Reg'l Hosp., 217 F.3d 379, 381 (5th Cir. 2000). In Hollowell, the court held that a court may allow the piercing of the veil of a limited liability company based on a totality of the circumstances review.
>
> We interpret that "a totality of the circumstances review" encompasses the possibility

III.    **Conclusion**

For the foregoing reasons, the Defendants' Motion to Alter or Amend the Judgment Under FRCP 59(e) (Doc. 84) will be GRANTED IN PART AND DENIED IN PART, as specified above.

SIGNED on this 20th day of August, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

that a district court can allow a district court to pierce the veil of a LLC under the alter ego doctrine. Furthermore, as the Louisiana Supreme Court has explained the veil of an entity can be pierced ". . . where the corporation is found to be simply the 'alter ego' of the shareholder. It usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation." The Supreme Court further reasoned that "[i]n order properly to disregard the corporate entity, one of the primary components which justifies piercing the veil is often present: to prevent the use of the corporate form in the defrauding of creditors."

ORX Res., Inc. v. MBW Exploration, L.L.C., 32 So. 3d 931, 935 (La. App. 4th Cir. 2010) (internal citations and footnotes omitted). This conclusion, however, is not without controversy; some Louisiana courts maintain that the limited liability company veil may not be pierced in the same way as that of a corporation. See, e.g., Double-Eight Oil and Gas, L.L.C. v. Caruthers Producing Co., 13 So. 3d 754, 758 (La. App. 2d Cir. 2009) ("A limited liability company has the power as set forth in La. R.S. 12:1301, et seq. As such, it is a separate legal entity distinct from its member owners. La. R.S. 12:1301(10). A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company. La. R.S. 12:1320(C).").

Nonetheless, as noted in ORX Resources, Inc., the United States Court of Appeals for the Fifth Circuit has held that a limited liability company's veil may be pierced, just as that of a corporation. See Hollowell, 217 F.3d at 385-86 & n.7. The factors specified in that case, and which must be addressed by the parties in their briefs, are, in addition to the totality of the circumstances:

> 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings.

Id. at 385-86 (quoting Riggins v. Dixie Shoring Co., 590 So. 2d 1164, 1167 (La. 1991)).

15