RECEIVED
DEC 20 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DR. REYMOND MEADAA, et al. | CIVIL ACTION NO. 09-1211 |
| -vs- | JUDGE DRELL |
| K.A.P. ENTERPRISES, L.L.C., et al. | MAGISTRATE JUDGE KIRK |

### SUPPLEMENTAL RULING

In accordance with our Order dated August 20, 2010 (Doc. 104), we reconsider our May 25, 2010 Judgment (Doc. 83) on Plaintiff's Motion for Summary Judgment (Doc. 18). For the reasons described herein, we find the Judgment dated May 25, 2010 (Doc. 83) will be reinstated insofar as it requires repayment of $3.5 million to Plaintiffs. In addition, we find SAINATH, L.L.C., ARUN KARSAN, VERSHA PATEL KARSAN, and K.A.P. ENTERPRISES, L.L.C. are liable individually, jointly, and in solido for the repayment of $3.5 million to Plaintiffs.

I.    Procedural Background

The underlying facts of this case are detailed in multiple previous rulings. *See* Docs. 82 & 103. On May 25, 2010, this Court granted Plaintiff's "Motion for Partial Summary Judgment" and ordered Defendants, K.A.P. Enterprises, L.L.C. ("K.A.P."), Sainath, L.L.C. ("Sainath"), and Arun and Versha Patel Karsan ("the Karsans"), to repay Plaintiffs the sum of $3.5 million, the amount they had advanced in total. (Doc.

82). This summary judgment was based on a finding that Plaintiffs were entitled to a return of their investment funds. The remaining issues presented by Plaintiffs remained viable. (Doc. 83). Upon the present motion for reconsideration, this judgment was subsequently withdrawn based on the issue of which defendant should be responsible for repayment of the $3.5 million. (Docs. 103 & 104). By Order dated August 20, 2010, we directed the parties to submit briefs "discussing their respective positions as to which defendants may or should be cast in judgment on the Plaintiff's Motion for Partial Summary Judgment (Doc. 18)." (Doc. 104). Specifically, the parties were required to address the following questions:

> (1) whether this Court's judgment may or should be levied against the Karsans individually, or whether one or both of the corporate defendants may or should also be liable individually, jointly, or in solido, for the refund mandated by the Court's judgment; and
>
> (2) if necessary, whether the Court may or should pierce the corporate veil of one or both of the organizational defendants herein.

(Doc. 104). In accordance with that order, and after carefully considering the arguments contained in the parties' briefs and a thorough and independent review of the record, we issue an amended judgment on the Plaintiffs' Motion for Partial Summary Judgment.

II.   **Law and Analysis**

    A.   *Plaintiffs are Entitled to be Repaid the $3.5 million Investment*

As a threshold matter, we reaffirm our prior decision that Plaintiffs are indeed entitled to repayment of their $3.5 million investment. For the sake of brevity, we reiterate our detailed argument on this issue contained in our ruling dated August 20,

2010 (Doc. 103). Put simply, Plaintiffs did not receive the agreed upon consideration in return for their investment money, namely (1) shares in an L.L.C. (2) that owned the Convention Center. Sainath was a validly formed limited liability company, but the purpose of the company was incomplete vis-a-vis the investors. The investors never consented in writing to the formation of Sainath. Plaintiffs received no shares or interests in Sainath, nor was ownership of the Convention Center ever transferred to Sainath. Based on this failure of cause, Plaintiffs are entitled to recover the $3.5 million they invested.

B.  *Sainath, the Karsans, and K.A.P. are Responsible for Payment Individually, Jointly, and In Solido*

Our determination of which defendant should be cast in judgment for the $3.5 million repayment has been reached by a close examination of the voluminous record in this case. Specifically, we identified in whom or what the investments were made, to whom the money was paid, and how the money was used.

1.  Sainath, L.L.C.

Plaintiffs assert and Defendants have not disputed that Sainath was the payee on the checks written by Plaintiffs for their investments. (Doc. 1). In addition, copies of certain of Plaintiffs' checks were submitted to the Court, and Sainath, L.L.C. was the identified payee. (Doc. 138-3). Both Mr. and Mrs. Karsan testified in their depositions that the investment funds were deposited directly into a Sainath bank account set up at Red River Bank in Alexandria. Mrs. Karsan stated Harrel Davis (a Karsan friend and legal advisor at the time) was given some of the checks on behalf of Sainath, other checks were direct deposited, and other of Plaintiffs' investments were

wired to the Sainath account. (Doc. 116-1 at pp. 107–10). There is no doubt nor dispute that the money paid was intended as an investment in Sainath and Sainath was enriched by Plaintiff's investments; therefore Sainath is liable to Plaintiffs for the repayment of the $3.5 million, broken down specifically as follows: Reymond Meadaa, $625,000; Hulenci, L.L.C., $250,000; Dinesh Shaw, $625,000; Harry R. Hawthorne, $500,000; Navtej Rangi, $750,000; Naja Holding, L.L.C., $125,000; Jose Mathew, $625,000. (Doc. 116-2, Exhibit O).

   2.   <u>Arun Karsan and Versha Patel Karsan</u>

   We also find the Karsans are liable to Plaintiffs through a piercing of the veil of Sainath, L.L.C. Although there are clear differences in form, "[t]he same policy considerations in piercing the veil of a corporation apply to a limited liability company." <u>Imperial Trading Co. v. Uter</u>, 837 So. 2d 663, 669 n.7 (La. App. 1st Cir. 2002) (citing Susan Kalinka, Louisiana Limited Liability Companies and Partnerships, § 1.32, pp. 80-81 *in* 9 La. Civ. Law Treatise (3d ed. 2001)); <u>see</u> <u>also</u> <u>Hamilton v. AAI Ventures, LLC</u>, 768 So. 2d 298, 302-03 (La. App. 1st Cir. 2000) (affirming a state district court's judgment piercing the veil of a limited liability company). Generally, members of LLCs are not personally liable for the debts of the company in the absence of fraud. <u>See</u> La. R.S. 12:1320(B), (D).

   By way of analysis of the concept, in Louisiana, there are two principal bases upon which courts have traditionally ignored the corporate form, i.e. have "pierced the corporate veil": (1) "where the corporation is found to be simply the 'alter ego' of the shareholder. . . . [and this] usually involves situations where fraud or deceit has been

4

practiced by the shareholder acting through the corporation"; and (2) "when the shareholders disregard the requisite corporate formalities to the extent that the corporation ceases to be distinguishable from its shareholders." Riggins v. Dixie Shoring Co., 590 So. 2d 1164, 1168 (La. 1991). Courts may consider a number of factors when determining whether or not to pierce the veil: "1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." Id. In all, courts are highly reluctant to pierce the veil. See id.

Even considering such reluctance, the facts in the record weigh heavily in favor of piercing the veil of Sainath. Plaintiffs' supposed Sainath investments were diverted by the Karsans to renovate a hotel owned by K.A.P. Mrs. Karsan stated in her deposition that K.A.P. had been formed "as a holding company for [her] personal investments." (Doc. 116, Exhibit A at p. 46). Also, when asked if K.A.P.'s funds the Karsans' personal funds were "interchangeable for all purposes," she answered in the affirmative. Id. at pp. 183–84. Mrs. Karsan further stated that the money from the Sainath account was used to pay K.A.P.'s mortgage on the hotel. Id. at 143. The renovation of the hotel directly benefitted K.A.P., a clear direct benefit to the Karsans as individuals and no one else, given the fact that K.A.P. assets were equivalent to the assets of the Karsans as individuals.

Then also, Sainath's Operating Agreement[1] (Doc. 116-2, Exhibit O) includes an attachment detailing the dates and amounts paid by each investor. Two Plaintiffs, Reymond Meadaa and Hulenci LLC, paid their contributions on December 22, 2006 and December 26, 2006 respectively. These dates are important because the bank account in Sainath's name was not opened until January 2, 2007, more than a month after Sainath was formed on November 30, 2006. (Doc. 123-1, Exhibit 22). The Karsans did not identify, and we have no other evidence of, how these December investments were handled prior to the opening of the Sainath account.

Sainath was properly organized and formed as an L.L.C., but no formalities were followed in transacting the company's affairs following its organization. The record is void of any evidence that Sainath held meetings or that the Karsans as managers even provided updates to its investors (purported "members"). No certificates or other records exist that any form of ownership interest was actually issued. As Plaintiffs correctly observe: "No votes were cast. . . . No company resolutions were passed." (Doc. 116 at p. 27). The Karsans have not provided evidence to the contrary.[2] In short, the Karsans as the sole members and managers of Sainath observed no formalities to rebut the argument that Sainath was yet another corporate

---

[1]  The Karsans are the sole members and managers of Sainath, L.L.C. according to this Operating Agreement. Further, the Karsans admitted that no Plaintiff ever signed the Operating Agreement; therefore no Plaintiff was ever a member of Sainath, L.L.C. according to the terms of the Operating Agreement. (Doc. 11).

[2]  The Karsans submitted the affidavit of Kurt Oestriecher, CPA (Exhibit 18 attached to Doc. 123) in support of their argument that Sainath's accounts and records were maintained separately from their personal accounts and records. However, by Order dated Sept. 19, 2011 (Doc. 177), we granted Plaintiffs' motion to strike this affidavit because it contained conclusory assertions which did not state the basis for Mr. Oestriecher's personal knowledge. The Karsans have failed to submit additional evidence.

form for them to exercise their personal investment pursuits, and they operated the company at their "leisure and direction." ORX Resources, Inc. v. MBW Exploration, L.L.C., 32 So.3d 931, 938 (La. App. 4 Cir. 2010). Although the Karsans were the sole agents authorized to spend the investment monies (Doc. 116-2, Exhibit O), the evidence is still clear that they diverted the cash to their own ends, enhanced their own property, and gave the investors nothing. They still have not. The investors have no verifiable interest in what is a worthless empty shell of an L.L.C. unfortunately named "Sainath." The Karsans have presented no evidence justifying their essentially fraudulent actions.

3.   K.A.P. Enterprises, L.L.C.

There is no question that K.A.P. owned (and continues to own) the hotel and convention center which was renovated using Plaintiffs' $3.5 million investment funds. (Doc. 82, p. 12–13). Under Louisiana law, K.A.P. was "enriched without cause at the expense of [Plaintiffs]" and "is bound to compensate" them. La. C.C. Art. 2298. Plaintiffs have shown enrichment without cause based on the use of Plaintiffs' $3.5 million (impoverishment) directly resulted in an increase in value to the property owned by K.A.P. (enrichment). See Gulfstream Services, Inc. v. Hot Energy Services, Inc., 907 So. 2d 96, 100 (La. App. 1 Cir. 2005). We recognize that enrichment without cause is a subsidiary remedy and should only be applied when the plaintiff lacks "any other remedy at law." Id. This remedy is appropriate here because no contract exists between Plaintiffs and K.A.P. to provide a remedy under contract law, and K.A.P. itself did not commit a delictual action against Plaintiffs. It was the Karsans' actions, or

7

rather inactions in failing to transfer the property from K.A.P. to Sainath, that are the reasons repayment is due to Plaintiffs. No cause existed for Plaintiffs to pay to increase the value of property <u>owned by K.A.P.</u> Therefore K.A.P. is also bound to repay Plaintiffs' investment funds.

    4.    <u>Solidary Liability</u>

Plaintiffs lost $3.5 million "as a result of the shared fault" of both Sainath and the Karsans. <u>See</u> Saul Litvinoff, The Law of Obligations, § 7.61, p. 157 *in* 5 La. Civ. Law Treatise (1st ed. 1992). As discussed above, K.A.P. and the Karsans as individuals are "interchangeable for all purposes," and the fault of K.A.P. is based on the fault of the Karsans. (Doc. 116, Exhibit A at pp. 183–84). Both Sainath and the Karsans received a benefit from Plaintiffs, the Karsans intentionally provided nothing to Plaintiffs in return. Plaintiffs paid to Sainath $3.5 million which was used by the Karsans to improve property owned by K.A.P. as their alter ego. Each Defendant is liable for the full performance to Plaintiffs. <u>See</u> <u>Ratcliff v. Boydell</u>, 674 So.2d 272, 281–82 (La. App. 4 Cir. 1996) (finding solidary liability for law partners who were required to repay attorney fees to former clients). Accordingly, the Karsans, Sainath, and K.A.P. are solidarily liable for the repayment of the full amount. <u>See</u> La. C.C. Arts. 1794 & 2324(A). <u>See</u> <u>ORX Resources</u>, 32 So. 3d at 938 (affirming the district court's decision to hold the L.L.C. solidarily liable with a member using the company as his alter ego).

III.   **Conclusion**

For the foregoing reasons, we find Sainath, L.L.C., Arun Karsan, Versha Patel Karsan, and K.A.P. Enterprises, L.L.C. are liable individually, jointly, and in solido for the repayment of the $3.5 million to Plaintiffs. A judgment to this effect accompanies this ruling.

SIGNED on this 2ℓ day of December, 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

9