RECEIVED
DEC - 1 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| REYMOND MEADAA, et al. | CIVIL ACTION NO. 09-1211 |
| -vs- | JUDGE DRELL |
| K.A.P. ENTERPRISES, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is Plaintiffs' Motion for Reconsideration (Doc. 331) of our Order (Doc. 296) denying Plaintiffs' Motion for Summary Judgment on Liability Under Complaint Count VIII: Violation of the Louisiana Securities Law (Docs. 289) and Defendants' Motion for Partial Summary Judgment (Doc. 289). Plaintiffs' Motion for Reconsideration is **GRANTED** and thus we will reconsider the motions for summary judgment.

Plaintiffs' motion asks only for summary judgment on claims under the Louisiana Securities Law; Defendants' motion asks for summary judgment on the issues of breach of fiduciary duty, request for an accounting, claims under the Louisiana Unfair Trade Practices Act (LUTPA), claims under the Louisiana Racketeering Act, Louisiana Securities Law violations, and federal securities law violations. We have considered the filings and evidence in the record and the parties' arguments contained in their briefs, and we are prepared to rule on the pending motions in turn. For the following reasons,

Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion for Summary Judgment is **GRANTED**.

I.  **Background and Claims to be Decided**

The facts in this case have been detailed in previous rulings by this Court. (Docs. 82, 103, 181). Plaintiffs' claims arise from a real estate investment venture in which Plaintiffs attempted to purchase membership units in a limited liability company, SaiNath, L.L.C. (SaiNath) that would own and operate the former Louisiana Hotel and Convention Center (Sai Hotel and Convention Center). Ownership of the Hotel and Convention Center was never transferred to SaiNath, and this Court previously ruled that Plaintiffs are entitled to return of the $3.5 million that they invested in this venture. (Doc. 83). A variety of issues remained after we made that ruling, and the parties' motions currently before us deal with many of them.[1]

II.  **Law & Analysis**

   A.  **Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party, who must

---

[1] There are multiple defendants in this case: Arun Karsan and Versha Patel Karsan in their individual capacities, K.A.P. Enterprises, L.L.C. (a Louisiana limited liability company wholly owned by the Karsans), and SaiNath. We have tried, in vain, to discern whether the parties allege that certain defendants are liable for certain claims, but it seems to be common to practice to use only "Defendants," thus ostensibly referring to all four potential defendants. We adopt that practice in this ruling.

2

"'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine issue with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little, 37 F.3d at 1075 (citations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### B. Louisiana Securities Law

The Louisiana Securities Law (formerly known as the Blue Sky Law), La. Rev. Stat. § 51:701 et seq., provides a right of action for certain unlawful conduct in connection with the sale of securities. Specifically, the law prohibits parties from selling or offering to sell securities

> by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

3

La. Rev. Stat. § 51:712 (A)(2). Therefore, in order to be entitled to judgment as a matter of law under the Securities Law, Plaintiffs must show as an initial matter that Defendants sold or offered to sell them securities. Then they must prove (1) that Defendants made a material false or misleading statement or omission in connection with those securities, (2) that Plaintiffs did not know of the untruth or omission, and (3) that Defendants did know of the untruth or omission, or could have known in the exercise of reasonable diligence. <u>Ponthier v. Manilla</u>, 951 So. 2d 1242, 1255 (La. App. 5 Cir. 2007) (quoting <u>Taylor v. First Jersey Sec., Inc.</u>, 533 So. 2d 1383, 1386 (La. App. 4 Cir. 1988)). Because the Louisiana Securities Law is modeled after the Federal Securities Act of 1933 (1933 Act), it is appropriate to look at jurisprudence interpreting the federal law for guidance when interpreting the Louisiana law. <u>Guidry v. Bank of LaPlace</u>, 954 F.2d 278, 286 (5th Cir. 1992); <u>State v. Powdrill</u>, 684 So. 2d 350, 353 (La. 1996). Plaintiffs move for summary judgment on their claim that Defendants violated this law. (Doc. 288). Defendants in turn move for summary judgment in their favor on the same claim. (Doc. 289).

    1.    <u>*Offer to Sell or Sale of Securities*</u>

The Louisiana Securities Law defines a security as:

> any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; <u>investment contract</u>; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest

4

or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

La. Rev. Stat. § 51:702 (15)(a) (emphasis added). This definition is modeled after the definition of a security in the federal law. Guidry, 954 F.2d at 286. Under the federal law, an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party." S.E.C. v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946). A membership unit in a limited liability company can be considered an "investment contract" and thus fall under the definition of a security. See KFC Ventures, L.L.C. v. Metairie Med. Equip. Leasing Corp., 2000 WL 726877 at *2-3 (E.D. La. June 5, 2000). The Fifth Circuit has clarified that the test for expecting profits "solely from the efforts of a promoter or third party" hinges on whether the efforts made by this third party "are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." Williams v. Tucker, 645 F.2d 404, 418 (5th Cir. 1981) (quoting S.E.C. v. Glenn W. Turner Enters., Inc., 474 F.2d 476, 482 (9th Cir. 1973)).

Additionally, under the Louisiana law, "'[s]ale' or 'sell' means and shall include every contract of sale or disposition of a security or interest in a security for value," while "[t]he term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of or solicitation of an offer to buy a security or interest in a security for value." La. Rev. Stat. § 51:702(13). In this case, a "sale" was accomplished when Plaintiffs gave value in the form of monetary payments to Arun Karsan and Versha Patel Karsan (the Karsans) for their membership interests in SaiNath.

5

Thus, it is clear that Plaintiffs purchased securities from the Karsans in the form of investment contracts. Plaintiffs gave value in order to participate in a common enterprise (membership in SaiNath), and all parties agree that they expected to be passive members of this enterprise while receiving profits due to the efforts of the Karsans in managing the hotel. (See especially Doc. 116, Exhs. L, O (SaiNath, L.L.C. Operating Agreement)).

    2.    *Material False Statement, Misrepresentation, or Omission*

The provision of the Louisiana Securities Law which makes it unlawful for a person to sell a security "by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary to make the statements made . . . not misleading" (La. Rev. Stat. § 51:712) is analogous to Section 12(2) of the 1933 Act (15 U.S.C. § 77l(a)(2)). Interpreting that provision, the Fifth Circuit has held that the test for a statement or omission's being material is "whether a reasonable man would attach importance to the fact misrepresented in determining his course of action." Simpson v. Se. Inv. Trust, 697 F.2d 1257, 1259 (5th Cir. 1983) (quoting the Fifth Circuit's definition of materiality for Rule 10b-5 actions and adopting it for Section 12(2) actions).

Plaintiffs point to "numerous" false and misleading statements or omissions in a memorandum in support of their motion. However, we need only address one in order to determine whether Defendants violated the Louisiana Securities Law. Plaintiffs point to statements the Karsans made promising that Plaintiffs would be members of a limited liability company which would own the Sai Hotel and Convention Center. It is uncontested at this point that Plaintiffs never became owners of membership interests

6

in a limited liability company that owned the Hotel and Convention Center (Docs. 82, 103). Moreover, we held, and the Fifth Circuit affirmed, that the failure to transfer the Sai Hotel and Convention Center to SaiNath's ownership represented a failure of cause in the contract for sale of membership units such that Plaintiffs were entitled to dissolution of the sale because of Defendants' failure to deliver the thing sold. (Doc. 82; Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 881-84 (5th Cir. 2014)). Necessarily, representations that SaiNath would be the owner of the Hotel and Convention Center were statements to which "a reasonable man would attach importance" if they went to the cause of the contract[2]. And, these statements were misrepresentations because the Sai Hotel and Convention Center was never transferred to SaiNath's ownership. Thus, the statements the Karsans made regarding ownership of the Hotel and Convention Center were material misrepresentations.

3. *Were Plaintiffs Aware of the False Statement or Omission?*

After proving that Defendants made a material false statement, misrepresentation, or omission, Plaintiffs next must prove that they were unaware of the misstatement or omission. Ponthier, 951 So. 2d at 1255. Clearly, Plaintiffs did not know that the statements the Karsans made regarding SaiNath's ownership of Hotel and Convention Center were false. As is mentioned above, equity ownership in a limited liability company that owned and operated the Hotel and Convention Center was the reason Plaintiffs paid Defendants their investment money. Further, Plaintiffs were

---

[2] "Cause is the reason why a party obligates himself." La. Civ. Code art. 1967.

unaware that the investment monies they paid in 2006 and 2007 had not provided for this ownership until a meeting in 2008, when they learned that SaiNath's Articles of Organization and Operating Agreement vested all control in the Karsans and named only the Karsans as members or managers, and that the Karsan's limited liability company, K.A.P. Enterprises, L.L.C. (K.A.P.) continued to own the Hotel and Convention Center. (Doc. 116, Exhs. L, O, and P; Doc. 133, Exh. A). Defendants have produced no evidence to show that Plaintiffs knew, at the time of the misrepresentations, that this money would not actually go to the intended purpose. Plaintiffs simply were not aware that the Karsans were making material misrepresentations when they purchased the securities at issue in this case.

    4. *Did Defendants Know of False Statement or Omission, or Could They Have Known in the Exercise of Reasonable Care?*

The final prong of the analysis for a violation of La. Rev. Stat. § 51:712 (A)(2) requires proving whether Defendants knew, or in the exercise of reasonable care could have known, of the materially false statement, representation, or omission they made to Plaintiffs. Ponthier, 951 So. 2d at 1255.

As is mentioned above, the material misstatements at issue are those that the Karsans made when they represented to Plaintiffs the money Plaintiffs paid would go to purchase membership units in a limited liability company that owned and operated the Hotel and Convention Center. Defendants allege that the Karsans did not make or were not aware of making any material misrepresentations or false statements regarding SaiNath's ownership of the Hotel and Convention Center, citing a 2010 letter from Red

8

River Bank refusing to transfer K.A.P.'s mortgage "and the collateral secured thereby" to SaiNath as evidence that they always intended for the transfer of ownership to take place. (Doc. 293, Doc. 123-1, Exh. 13). However, even viewing this evidence in the light most favorable to the Defendants, the letter alone, representing one apparent attempt to transfer the mortgage, does not prove that Defendants "always" intended to effect the transfer.. At all times, it was solely within the power of the Karsans, as the only members of K.A.P., to transfer ownership of the Hotel and Convention Center to SaiNath. Instead, the money from the SaiNath account, which was money that came from Plaintiffs' investments, was used to pay K.A.P.'s mortgage. (Doc. 116, Exh. A at 143). The Karsans knew that K.A.P owned the property when they proposed investments to Plaintiffs in 2006, knew at all times subsequent that the property remained in K.A.P.'s ownership, and made no discernible efforts to effectuate the transfer to SaiNath until the failed request to transfer the mortgage in 2010. (Doc. 116, Exh. A at 65-68. Doc. 123-1, Exh. 13). Therefore, we find that Defendants were aware that they were making misrepresentations when they told Plaintiffs that their investments would purchase membership units in a limited liability company that owned and operated the Hotel and Convention Center.

    5.   *Conclusions*

Based on the foregoing analysis, we find that Plaintiffs have proved Defendants violated the Louisiana Securities Law, specifically § 712(A)(2). Therefore, we find that Plaintiffs are entitled to judgment as a matter of law on their claim that Defendants violated state securities law.

9

### C. Breach of Fiduciary Duty & Demand for Accounting

In their Motion for Partial Summary Judgment, Defendants request judgment as a matter of law on the issues of whether they breached their fiduciary duty to Plaintiffs and whether they owe Plaintiffs a formal accounting of SaiNath's affairs. (Doc. 289). In a Reply Memorandum to Defendants' Motion, Plaintiffs agree that these claims are now moot, as they were based solely on their status as members of the limited liability company. All parties now agree Plaintiffs were not members of the limited liability company at the relevant time. (Doc. 289-2, Doc. 291). We agree that Plaintiffs' claims in this regard are moot and thus will grant judgment as a matter of law in favor of Defendants as to Plaintiffs' claim of breach of fiduciary duty and as to their demand for formal accounting of SaiNath, L.L.C.

### D. Violations of Louisiana Unfair Trade Practices Act

Louisiana Revised Statute 51:1401 et seq., commonly known as the Louisiana Unfair Trade Practices Act (LUTPA), makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 15:1405. In their Complaint, Plaintiffs asserted that Defendants are "competitors or potential competitors" of Plaintiffs who have committed "unfair trade practices" and thus violated this law. (Doc. 1). Defendants move for summary judgment on this claim based on their argument that they were not and will not be competitors with Plaintiffs (Doc. 289-2).

LUTPA is not applicable to securities violations. Stephenson v. Paine Webber, Jackson & Curtis, 839 F.2d 1095, 1101 (5th Cir. 1988); Feiber v. Cassidy, 723 So. 2d 1101,

10

1108 (La. App. 1 Cir. 1998); Taylor v. First Jersey Sec., Inc., 533 So. 2d 1383, 1388 (La. App. 4 Cir. 1988). As the Fifth Circuit concluded and two Louisiana courts of appeal agreed, "allowing securities actions under the act is inconsistent with the state statutory scheme for remedying securities violations" because there would be a "functional overlap" between the agency responsible for investigating and enforcing LUTPA claims, the Governor's Consumer Protection Agency, and the agency responsible for enforcing the Louisiana Securities Law, the state banking commissioner. Stephenson, 839 F.2d at 1101. Because we hold, as a matter of law, that the proposed shares in SaiNath that Plaintiffs purchased were securities and that the Louisiana Securities Law thus applies to the transaction, we also find that LUTPA does not apply to the sale of these shares. Thus, we will grant judgment as a matter of law in favor of Defendants on Plaintiffs' LUTPA claim.

### E. Louisiana Racketeering Act

The Louisiana Racketeering Act, which is modeled off of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, prohibits individuals from "knowingly receiv[ing] any proceeds derived, directly or indirectly, from a pattern of racketeering activity to use or invest . . . in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise." La. Rev. Stat. § 15:1353 (A). It also makes it unlawful for any person "knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property" through a pattern of racketeering activity. La. Rev. Stat. § 15:13535 (B). The statute defines "racketeering activity" as "committing, attempting to

commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit" a list of various crimes, one of which is unlawful practices regarding securities as defined under La. Rev. Stat § 51:712, or the Louisiana Securities Law. La. Rev. Stat. § 15:1352 (A)(19). And similar to the federal statute,[3] the Louisiana law defines a "pattern of racketeering activity" as "engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents." La. Rev. Stat. § 15:1352(C). Plaintiffs claim that Defendants engaged in a pattern of racketeering relating to their Louisiana Securities Law violations. (Doc. 1). Defendants move for summary judgment on this claim (Doc. 289).

Because Louisiana's Racketeering Act is modeled off of federal RICO legislation, federal decisions regarding RICO are persuasive when interpreting the state law. State v. Touchet, 759 So. 2d 194, 197 (La. App. 3 Cir. 2000). The United States Supreme Court, interpreting the federal RICO statute, held that in order to establish a "pattern of racketeering activity," plaintiffs or prosecutors must show the "relatedness" of defendants' activities and that these activities "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989) (emphasis in original). Louisiana's statute encompasses relatedness, defining a pattern of racketeering activities as one that involves two or more incidents "that have

---

[3] The federal statute defines a pattern of racketeering activity as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961 (5).

the same or similar intents, results, principals, victims, or methods of commission." La. Rev. Stat. § 15:1352 (C). The state law, like the federal statute, does not define continuity. But as the Supreme Court has explained, continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241.

Here, Plaintiffs have not proved that Defendants' activities constitute a pattern of racketeering. While violations of the Louisiana Securities Law can fall within the definition of racketeering activities under the Louisiana Racketeering Act, and the relatedness prong of the analysis is met because Defendants actions did have the same intent as well as the same victims, Plaintiffs have not shown there is a threat that Defendants will violate the law again or that the violations were part of a period of repeated conduct. Although there were multiple violations because there are multiple Plaintiffs who gave value in order to become members of the limited liability company, these violations are all a part of one activity – the proposed formation of SaiNath in order to purchase the Hotel and Convention Center. Based on the evidence at this time, there was no pattern of racketeering activity, and thus we will grant judgment as a matter of law to Defendants on this claim.

### F.   Federal Securities Law

Finally, Defendants ask for summary judgment in their favor on Plaintiffs' claims of violations of the Securities Exchange Act of 1934, specifically Rule 10b-5. (Doc. 289). Rule 10b-5 states:

>It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
>(a) To employ any device, scheme, or artifice to defraud,
>
>(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
>(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
>in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2013). Thus, in order to succeed on a claim of a Rule 10b-5 violation, the elements a plaintiff must prove are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, Inc. v. Scientific-Atlanta, 552 U.S. 148, 157 (2008). Scienter is a state of mind defined as "intent to deceive, manipulate, or defraud" or "severe recklessness." Rosenzweig v. Aurix Corp., 332 F.3d 854, 866 (5th Cir. 2003). Because scienter is a state of mind issue and state of mind is a question of fact that turns on credibility, summary judgment is disfavored. Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1266 (5th Cir. 1991). In order to award summary judgment when state of mind is at issue, a court must find that the moving party is entitled to judgment as a matter of law even after

14

drawing "<u>every</u> reasonable inference from the evidence in the record in a light most flattering to the nonmoving party." Id. (emphasis in original).

Viewing the evidence in this light, we do not find that Defendants are entitled to judgment as a matter of law. Both Plaintiffs and Defendants cite various party depositions as well as statements made by the Karsans to attempt to prove what the Karsans' state of mind was when they presented the SaiNath investment opportunity to the Plaintiffs and when they subsequently failed to transfer ownership of the Hotel to SaiNath, L.L.C. Viewing this evidence in a manner that is most favorable to Plaintiffs, we cannot say that there is no genuine dispute of material fact or that Defendants are entitled to judgment as a matter of law as to a violation of Rule 10b-5.

III. <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (Doc. 331) is **GRANTED**. Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART** as to breach of fiduciary duty, demand for accounting, claims under LUTPA, and claims under the Louisiana Racketeering Act, and **DENIED IN PART** as to Louisiana Securities Law claims and Rule 10b-5 violations. Plaintiffs' Motion for Partial Summary Judgment on Liability Under Count VIII: Violation of the Louisiana Securities Law is **GRANTED.**

SIGNED on this 26th day of November, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT