RECEIVED
APR - 7 2015
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| REYMOND MEDEAA, ET AL. | CIVIL ACTION NO. 09-1211 |
| -vs- | JUDGE DRELL |
| K.A.P. ENTERPRISES, L.L.C., ET AL. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is Plaintiffs' "Motion To Reinstate December 20, 2011 Judgment [Doc. No. 182], and Convert November 26, 2014 Judgment on Liability [Doc. No. 357] to a Final Money Judgment." (Doc. 359). For the following reasons, Plaintiffs' motion is DENIED in part and GRANTED in part.

### I. Background

The motion before the Court is part of difficult litigation that has been ongoing since 2009. The facts of the case are detailed in various prior rulings (see, e.g., Doc. 82), so we will not discuss them exhaustively here. Essentially, this case arises out of a failed real estate investment venture. Plaintiffs attempted to purchase ownership interests in a limited liability company (LLC) called SaiNath, L.L.C. (SaiNath), which was to own and operate the Sai Hotel and Convention Center in Alexandria, Louisiana. Although Plaintiffs transferred funds in order to accomplish this end, SaiNath never received ownership of the hotel. Instead, another LLC, namely K.A.P. Enterprises, L.L.C. (K.A.P.), wholly owned by Dr. Arun Karsan and Versha Patel Karsan (the Karsans),

maintained ownership. The Karsans never transferred the property. The money in SaiNath's account was used by the Karsans not to purchase the Hotel and Convention Center, but to pay for its mortgage and upkeep. Moreover, the Plaintiffs were never made record members of SaiNath – the Karsans were and are the sole members and managers of that LLC. We previously found that Plaintiffs were entitled to the return of the full amount of the money they invested in SaiNath, but because there are multiple defendants, there was question as to whether Versha Patel Karsan, Arun Karsan, K.A.P., and SaiNath were all liable. We ultimately held that they were liable individually, jointly, and in solido in our ruling on December 20, 2011. (Doc. 181).

In July 2014, the United States Court of Appeals for the Fifth Circuit remanded the case for consideration of one part of our holding on liability. Although the Fifth Circuit upheld our ruling that K.A.P. and SaiNath were liable to the Plaintiffs, it remanded our decision that the Karsans were also personally liable so that we could consider the application of the Louisiana Supreme Court's recent decision in Ogea v. Merritt, 130 So. 3d 888 (La. 2013), to that determination. Plaintiffs' motion seeks, in part, for us to "reinstate" our conclusions in that remanded ruling. However, because the case was remanded to us, plaintiffs' request is somewhat inappropriately made. The more appropriate approach is to issue a revised ruling. Plaintiffs also seek conversion of our December 2014 Judgment on liability (Doc. 357) into a final money judgment. That request, as particularized, is also inappropriate, as we will explain. Although "conversion" is inappropriate, the issuance of a correct money judgment is not. Thus the motion will be denied in part and granted in part.

2

II. <u>**Law and Analysis**</u>

A. Application of <u>Ogea</u>

In <u>Ogea v. Merritt</u>, the Louisiana Supreme Court considered the applicability of Louisiana Revised Statute § 12:1320 in determining when a member of an LLC is personally liable to third parties. 130 So. 3d 888. That statute reads, in full:

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
> C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
> D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

La. Rev. Stat. § 12:1320. It is subsection (D) of the statute that provides for exceptions to the statutory rule of limited liability for members of LLCs. That subsection provides for exceptions when a member of an LLC perpetrates a fraud, breaches a professional duty, or commits a "negligent or wrongful act." Significantly, although subsection (A) places liability considerations under the statute and suggests exclusivity of remedy, subsection (D) is an effective savings clause for existing remedies (i.e., jurisprudential remedies) in cases where fraud is found and the jurisprudence otherwise applies.

3

In Ogea, the Supreme Court clarified that the negligent or wrongful act exception should be analyzed using a four-part inquiry:

> 1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.

Ogea, 130 So. 3d at 900-01. In the instant case, we find that the fraud exception is applicable. The other exceptions are not. That is, analyzing the Karsans' conduct in light of the language of subsection (D), we cannot say that they owed a professional duty to the Plaintiffs or committed a tort or other wrongful act. The Karsans' actions at issue in this case were not required by a contract between the Plaintiffs and the LLC, and there is only evidence to show that they acted internal to the LLC structure. But they did commit fraud.

"Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953. We determined in our previous ruling that the Karsans made material misrepresentations of the truth in connection with the transfer of ownership of the Sai Hotel and Convention Center. (Doc. 356). Specifically, we held that because ownership of the Hotel and Convention Center was never transferred to SaiNath, statements the Karsans made promising that Plaintiffs would be members of a limited liability company which would

4

own the Sai Hotel and Convention Center were material misrepresentations.[1] (Id.). Therefore, we have already determined that the Karsans' actions met one significant prong of the statutory fraud analysis: whether a misrepresentation or suppression of the truth occurred. All that is left to determine is whether they made these statements with the intent to obtain an unjust advantage for themselves or to cause a loss or inconvenience to the Plaintiffs.

Defendants point out in their opposition memorandum to Plaintiffs' motion that intent to defraud is a mental state, which is a question of fact turning on credibility and for which summary judgment is disfavored. (Doc. 372 at 11); see Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265 (5th Cir. 1991). When analyzing state of mind in the summary judgment context, courts must be "vigilant to draw every reasonable inference from the record in a light most flattering to the nonmoving party." Int'l Shortstop, 939 F.2d at 1265 (emphasis in original). However, courts are not prohibited from entering summary judgment when intent is in question, particularly where the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

We find that even viewing the evidence in the light most favorable to the Karsans, there is no genuine dispute of material fact that they intended to obtain an unjust

---

[1] Plaintiffs at times in their briefing suggest that the misrepresentations the Karsans made occurred before SaiNath was formed, and thus that neither a piercing the corporate veil nor a § 12:1320 is necessary to find personal liability. However, the Karsans made representations about SaiNath owning the hotel both before and after the LLC was formed (see Medeaa v. K.A.P. Enters, L.L.C., 756 F.3d 875, 878 (5th Cir. 2014), so we do not consider this argument.

5

advantage for themselves. The Karsans knowingly kept ownership of the Sai Hotel and Convention Center with K.A.P., an LLC which they wholly owned, rather than transferring it to SaiNath, the LLC which they promised would own the hotel. This necessarily created an unjust advantage: the Karsans' LLC owned the Sai Hotel and Convention Center, while the LLC which the Plaintiffs attempted to purchase shares of so as to own the hotel merely paid the mortgage and had no assets. Additionally, we have already held "the evidence is . . . clear that [the Karsans] diverted the cash to their own ends, enhanced their own property, and gave the investors nothing." (Doc. 181 at 7). The only evidence the Karsans have ever pointed to in order to show that they did not intend to obtain this unjust advantage are statements from some Plaintiffs asserting that they were not sure what the Karsans' state of mind was (Doc. 372 at 11-12, citing Doc. 289-3) and one letter from the Red River Bank refusing to transfer the mortgage in K.A.P.'s name to SaiNath. (Doc. 293, Doc. 123-1, Exh. 13). Defendants argue that Plaintiffs' speculation as to the Karsans' state of mind is proof thereof, and that this letter, written in 2010, <u>after</u> this litigation began, shows that the Karsans always intended to transfer ownership of the hotel to SaiNath. This asks us to make improbable inferences.

Thus, viewing the evidence in the light most favorable to the Karsans, we find that there is no genuine dispute of material fact as to whether they, as members of SaiNath, practiced fraud upon the Plaintiffs. Therefore, La. R.S. § 12:1320(D) applies and the Karsans are personally liable to the Plaintiffs for the money invested in SaiNath.

**B.     Piercing the Corporate Veil**

6

In our previous ruling (Doc. 181), we held that the Karsans were liable to the Plaintiffs by a piercing of the corporate veil. It is not necessary to revisit this analysis, because we find that, in any event, the Karsans are personally liable under § 12:1320(D). However, we note that neither the Louisiana Supreme Court in <u>Ogea</u> nor the Fifth Circuit in its analysis of our prior ruling required that § 12:1320 be the exclusive remedy for holding members of LLCs personally liable for their actions when fraud is involved. <u>See Medeaa v. K.A.P. Enters., L.L.C.</u>, 756 F,3d 875, 885 (5th Cir. 2014); <u>Ogea</u>, 130 So. 3d 888, 897 (La. 2013). In an important context, <u>Ogea</u> is a limited opinion, for the plaintiff had not invoked the jurisprudential piercing of the corporate veil doctrine in the district or appellate courts, and the lower courts did not independently rely on it to find fraud. 130 So. 3d at 985. In the absence of trial court consideration, the Supreme Court only applied the § 1320(D) analysis. <u>Id.</u> Therefore, Supreme Court's analysis was limited to statutory authority to determine the controlling principles, and so it analyzed the defendant's liability only in terms of § 12:1320. Although we are aware that many lower courts in Louisiana have analyzed personal liability of LLC members solely under § 12:1320 since then[2], we do not interpret the Supreme Court's decision to be one that refutes the jurisprudential piercing application in fraud cases. And, we observe that in remanding the case for us to consider the applicability of <u>Ogea</u> to the facts of this case, the Fifth Circuit did not invalidate piercing of the corporate veil jurisprudentially; rather, it noted that it "[did] not, of course, limit the district court to a theory of liability based on piercing

---

[2] <u>See, e.g.</u>, <u>Nunez v. Pinnacle Homes, L.L.C.</u>, 2014 WL 7154101 (La. App. 3 Cir. Dec. 17, 2014).

the corporate veil in determining if the Karsans are individually liable to the investors." Meadaa, 756 F.3d at 885. Either way, we find the Karsans are liable.

### C. Motion to Convert Liability Judgment into a Final Money Judgment

As we said above, Plaintiffs' motion also seeks a "conversion" of our December 1, 2014 judgment into a final money judgment. On that date (in addition to our prior rulings), we found that the Karsans individually violated the Louisiana Securities Law, specifically La. Rev. Stat. § 51:712(A). Under that law,

> Any person who violates R.S. 51:712(A) shall be liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment as computed in R.S. 51:714(C)(1), less the amount of any income received thereon, together with all taxable court costs and reasonable attorney's fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security. Damages are the amount which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment as computed in R.S. 51:714(C)(2).

La. Rev. Stat. § 51:714(A). Thus, under this theory as well, Plaintiffs were entitled to a return of the consideration paid in cash (their investments), interest from the date of payment to the date they are repaid, and reasonable attorney's fees and costs. However, Plaintiffs' motion notes that they intend to forego "pursuit of expenses and other taxable court costs." (Doc. 359-1 at 8). Though we have already ruled Plaintiffs are entitled to a return of their investment monies, we determine here that under the Louisiana Securities Law, they are entitled to a return of their investments, plus interest at the

8

state rate of judicial interest from the date each investment was made to the date of repayment, and attorneys fees, an award of which will be determined post judgment, by separate motion. Judicial interest will run from the date of each investment, until paid.

### III. Conclusion

Based on the foregoing analysis, Plaintiffs' motion is DENIED in part as to reinstatement of our December 2011 judgment and conversion of our December 2014 judgment into a final money judgment, but GRANTED as to the judgment sought by Plaintiffs. An appropriate judgment will follow.

SIGNED on this 7th day of April, 2015 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT